```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

**MELISSA DESKINS,**

        Plaintiff,

v.                                    Civil Action No. 2:18-cv-01109

**SOUTHERN WEST VIRGINIA
COMMUNITY AND TECHNICAL COLLEGE,**

        Defendant.

### MEMORANDUM OPINION AND ORDER

Pending is plaintiff's motion for conditional certification of the present action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), filed in the Circuit Court of Kanawha County, West Virginia, alongside her original complaint, on or about May 29, 2018. Defendant removed this case to this court on July 3, 2018.

### I. Background

Plaintiff Melissa Deskins initiated this action in the Circuit Court of Kanawha County against defendant Southern West Virginia Community and Technical College "to recover damages for herself and on behalf of others similarly situated to her, for unpaid overtime" under the FLSA, 29 U.S.C. § 201 et seq. Compl., ECF No. 2-1, at 4.

Plaintiff worked in defendant's human resources department for approximately three years before her employment with defendant ended on April 27, 2018. Id. at ¶ 6. Defendant is an "employer" as that term is defined in the FLSA. 29 U.S.C. § 203(d); Compl., ECF No. 2-1, at ¶ 3. "Defendant's main campus and administrative offices, including its payroll and human resources departments, are located on Defendant's Logan campus." Litteral Aff., ECF No. 6-1, at ¶ 4. Defendant has five locations in West Virginia: Boone/Lincoln County Campus, Williamson Campus, Lincoln Location, Logan Campus, and Wyoming/McDowell Campus. Id. at ¶ 5.

Defendant maintains a 4-day workweek in which non-exempt employees are required to work 9.5 hours a day, Monday through Thursday. Compl., ECF No. 2-1, at ¶ 14. Non-exempt employees are not scheduled to work on Friday, Saturday or Sunday. Id. Mr. Litteral contends that employees are expected to work 9.5 hours Monday through Wednesday and to work 9 hours on Thursday. Litteral Aff., ECF No. 6-1, at ¶ 6. They are, according to him, allowed to work an additional 2.5 hours before working 40 hours in a workweek. Litteral Aff., ECF No. 6-1, at ¶ 6.

Defendant has approximately 169 non-exempt positions, which includes full and part-time employees as well as student workers, and some of the positions are vacant. Id. at ¶ 7.

Plaintiff claims that she consistently worked in excess of forty hours per workweek and was not paid one and one-half times her regular hourly rate for such hours worked despite, she asserts, that she was never exempt from the minimum wage/maximum hour requirements of the FLSA. 29 U.S.C. § 213; Compl., ECF No. 2-1, at ¶ 8-10. It is further alleged that defendant never recorded the actual hours worked by plaintiff, nor did defendant require plaintiff to record her own hours worked, thus violating the FLSA. 29 U.S.C. § 211(c); Compl., ECF No. 2-1, at ¶ 11. Defendant, however, does have a policy by which non-exempt employees and their supervisors are supposed to submit and approve time cards as well as apply for and approve overtime hours and payment. Litteral Aff., ECF No. 6, at ¶¶ 9-12. Overtime hours may be approved, according to defendant's policy, either before or after the hours are worked. Id. at ¶ 12.

Plaintiff contends that Sam Litteral, defendant's chief financial officer, "knowingly and deliberately suffered and permitted Plaintiff to work hours in excess of forty (40) in one week while knowingly and deliberately failing to pay

Plaintiff legally-required overtime rates." Compl., ECF No. 2-1, at ¶ 12. Further, plaintiff believes that, after communicating with "no fewer than two other current non-exempt" employees, the same policies that resulted in her not being properly paid for overtime work were applied to others. Id. at ¶ 13. Specifically, other non-exempt employees have confirmed with plaintiff that Litteral stated that "he would not approve pay for the overtime hours worked." Id.

Plaintiff contends, "[u]pon information and belief, other FLSA non-exempt employees of Defendants, in addition to Plaintiff, have been improperly compensated by Defendants in a manner similar or identical to the . . . Plaintiff . . . . Under 29 U.S.C. § 216(b), these other employees are 'similarly situated' to Plaintiff for purposes of this litigation." Id. at ¶ 5. Plaintiff also maintains that defendant cured its illicit pay practices in May 2017. Pl.'s Mem. Supp. Mot. Conditional Certification, ECF No. 2-1, at 17.

The plaintiff seeks damages (including overtime pay due, liquidated damages and attorney fees, costs, and interest) under 29 U.S.C. § 255 for "knowing and deliberate[] violations of the Act," incurred over a period of three years that predate the filing of the complaint. In addition, they seek this present certification to issue notice to all similarly situated

plaintiffs.  Pl.'s Mot. Conditional Certification, ECF No. 2-1, at 10.  Accompanying plaintiff's motion is the affidavit of Melissa Deskins.  Deskins Aff., ECF No. 2-1, at 18-22.

Defendant timely filed a notice of removal to this court pursuant to 28 U.S.C. § 1331 on July 3, 2018.  Not. Removal, ECF No. 1, at ¶ 3.  On August 20, 2018, defendant filed a response in opposition to plaintiff's motion for conditional collective action certification, with Mr. Litteral's affidavit attached, to which the plaintiff has replied.  In the defendant's response, it requests that certification be denied, or alternatively, limited.  Def.'s Resp., ECF No. 6, at 10-11. Defendant contends, in the alternative to denying plaintiff's motion, that the proposed collective action notice should be revised.  Id. at 11-13.

On August 24, 2018, pursuant to the request of the parties, the court entered an order directing that discovery be stayed pending the further of the court, specifically, until the court enters a ruling on the plaintiff's motion.

## II. Analysis

### A. Conditional Certification of the Collective Action

Employees may bring a collective action under the FLSA on behalf of similarly situated employees. 29 U.S.C. § 216(b). According to the statute, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court." Id. The Supreme Court authorized courts to facilitate notice to potential plaintiffs in such collective actions, emphasizing the importance of "employees receiving accurate and timely notice concerning the pendency of the collective action" and observing that "[c]ourt authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits." Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 172 (1989). The Supreme Court underscored the district court's discretion in managing the certification process. Id. at 171.

As a consequence, many courts have chosen to adopt a two-stage approach to managing collective actions under the Act, which originates in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987). The first stage consists of conditional certification to give notice to potential class members and takes place early in the litigation, before much of the

discovery. At the first stage, the court requires only that the plaintiffs "make a 'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Encinas v. J.J. Drywall Corp., 265 F.R.D. 3, 6 (D.D.C. 2010) (quoting Castillo v. P&R Enters., Inc., 517 F. Supp. 2d 440, 445 (D.D.C. 2007)). That showing "is ordinarily based mostly on parties' pleadings and affidavits." Id. at 6 (citations omitted). The second stage is usually triggered by a decertification motion by the defendant, after much of the discovery has taken place, in an attempt to show that "the plaintiffs are not, in fact, similarly situated." Id.

Although the Court of Appeals for the Fourth Circuit has not settled on a particular test for conditional certification, courts nationwide generally consider the burden on the named plaintiffs at the first stage to be relatively lenient. See, e.g., Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001), cert. denied 519 U.S. 982 (quoting Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996)) (characterizing the plaintiff's burden at the notice stage as "not heavy" and requiring it to be met by "making substantial allegations of class-wide discrimination"); Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012)

(internal quotations omitted) (affirming the use of the two-step approach and noting that the first-stage "conditional certification" is "not really a certification" but "actually the district court's exercise of [its] discretionary power . . . to facilitate the sending of notice to potential class members"); Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214 (5th Cir. 1995), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003) ("Because the court has minimal evidence, this determination [at the notice stage] is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.").

Some courts in this circuit have noted, however, "[a] court's discretion to facilitate notice is not unfettered. Indeed, courts should not exercise their discretion to facilitate notice unless '[t]he facts and the circumstances of the case illustrate' that a class of 'similarly situated' aggrieved employees exists." Purdham v. Fairfax Cty. Pub. Sch., 629 F. Supp. 2d 544, 547-48 (E.D. Va. 2009) (quoting Sperling, 493 U.S. at 170). "The relevant inquiry . . . is not whether the court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise that discretion." Camper v. Home Quality Mgmt., Inc., 200 F.R.D. 516, 519 (D. Md. 2000) (citation omitted). "[A] court may determine that

conditional certification is inappropriate where multiple claims cannot be adjudicated efficiently because they would require 'substantial individualized determinations for each class member.'" Syrja v. Westat, Inc., 756 F. Supp. 2d 682, 686 (D. Md. 2010) (citing Purdham, 629 F. Supp. 2d at 549)).

Defendant argues that plaintiff has not met her burden of showing that she is similarly situated to other non-exempt employees of defendant, even under the lenient standard used by courts to conditionally certify a class in a collective action. Def.'s Resp., ECF No. 6, at 7. Specifically, defendant argues that plaintiff offers only "mere allegations of a potential class" which "are insufficient and warrant the denial of conditional certification." Id. at 8 (citing Purdham, 629 F. Supp. 2d at 548).

The plaintiff has alleged in her complaint and declared in her affidavit that she and others who work under Mr. Litteral did not apply for overtime wages for fear of retaliation. Specifically, the plaintiff notes that she communicated with "two other current non-exempt Southern employees that each regularly works and has worked outside of the normal working schedule with the specific knowledge of Litteral and each has received Litteral's either explicit or tacit direction that he would not approve pay for the overtime

9

hours worked." Compl., ECF No. 2-1, at ¶ 6. Further, in her affidavit, plaintiff stated that Litteral told her, and she heard him tell other non-exempt employees, that defendant "was not legally required to pay for overtime hours worked by employees that was not approved in advance." Deskins Aff., ECF No. 2-1, at 18.

Plaintiff refers to her personal knowledge of two individuals who regularly work uncompensated overtime. Id. at 20-21. One of these individuals worked as a non-exempt employee in the finance department but was asked by Litteral to work in a new capacity. Id. at 20. Plaintiff states that this individual informed her that with this new position, the individual was working well over forty hours a week but did not raise the issue with Litteral or defendant for fear of being fired. Id.

Plaintiff also notes that through her experience in defendant's human resources department and her ongoing relationships with current employees of defendant, she knows others who regularly worked more than forty hours each workweek yet do not apply for overtime wages based on Litteral's implicit threats. Id. at 19-20. Finally, in the affidavit attached to her reply, plaintiff declares that while she worked for defendant, she remembers Litteral "making statements . . . to the effect that the college was not legally obligated to pay

non-exempt employees for overtime hours not specifically approved in advance," at college-wide meetings. Deskins Aff., ECF No. 11-1, at ¶ 2. She also notes that she has discussed Litteral's statements with a non-exempt employee at the Williamson Campus who works in an academic department and who was discouraged from submitting claims for overtime wages based on those statements. Id. at ¶ 3.

Plaintiff has, through both her complaint and affidavits, clearly made a modest factual showing that she, and other non-exempt employees working for Litteral, were the victims of a plan to keep them from being paid, or even applying for, the overtime wages they were owed. See Romero v. Mountaire Farms, Inc., 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011) ("[T]he standard for conditional certification is fairly lenient and requires 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'") (quoting Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001)).

Defendant next contends that conditional certification should be denied inasmuch as this case is not manageable as a collective action and therefore does not serve one of the primary purposes of the FLSA: promoting judicial economy. Id. at 8.

Some courts have opted to defer manageability concerns until the second stage of collective action certification. See, e.g., Vondriska v. Premier Mortg. Funding., Inc., 564 F. Supp. 2d 1330, 1336 (M.D. Fla. 2007) (asserting that "concerns regarding the manageability of the proposed class and whether the interests of judicial economy will actually be served by a collective action . . . are more appropriately addressed at the decertification stage when additional information is available regarding the characteristics of the class"); Gieseke v. First Horizon Home Loan Corp., 408 F. Supp. 2d 1164, 1168 (D. Kan. 2006) (deferring manageability issues to the decertification stage). Other courts, however, have "exercised their discretion and have taken the manageability of a proposed class into account at the notification stage." Syrja, 756 F. Supp. 2d at 689; see also, e.g., Purdham, 629 F. Supp. 2d at 552 (concluding that "conditional certification [was] not appropriate based on the probable necessity of individualized FLSA determinations for each putative class member").

Plaintiff claims that she can prove that she worked uncompensated overtime by presenting "e-mails that should still be maintained by Southern, personal and work phone records that will demonstrate my attendance at and performance of work after-hours, and other secondary sources of information that will

demonstrate my uncompensated work." Deskins Aff., ECF No. 2-1, at 21. Plaintiff further asserts that a three-year statute of limitations applies to her and other non-exempt employees' claims inasmuch as defendant's violations of the FLSA were "knowing and deliberate[]." Compl., ECF No. 2-1, at 7; see 29, U.S.C. § 255.

It is likely then, that e-mail and phone records, accrued over a three-year period, would have to be obtained for each opt-in plaintiff, then be compared to each plaintiff's work time records. Given that the non-exempt employees' regularly scheduled hours amount to only 37.5 hours a week and each was allowed to work 2.5 more hours without being entitled to overtime, a careful examination of all this evidence would be required to determine how much uncompensated overtime each plaintiff would be entitled to receive. Defendant maintains that these facts make the case unmanageable.

Indeed, the court will need to evaluate the amount of damages owed to each plaintiff. But, "it is not clear without additional discovery that these issues would weigh against certification, given that 'individual circumstances are inevitably present in a collective action.'" Randolph v. PowerComm Constr., Inc., 7 F. Supp. 3d 561, 576-77 (D. Md. 2014)

(quoting Butler v. DirectSAT USA , LLC, 876 F. Supp. 2d 560, 570 (D. Md. 2012)).

Accordingly, the court finds sufficient cause to grant conditional certification to proceed with notice to other potential opt-in plaintiffs.

B. Scope of Notice

Defendant argues that the class should be limited to "full-time, non-exempt employees currently or formerly working in administrative offices on Defendant's Logan Campus." Def.'s Resp., ECF No. 6, at 10. Defendant notes that of their 169 non-exempt employees, many are part-time and student employees, and contends that "these part-time employees would have to work a significant number of hours to reach the forty (40)-hour overtime threshold set forth at 29 U.S.C. § 207(a)(1)." Id.

Further, the defendant believes that inasmuch as plaintiff's complaint and affidavit specifically note that it is Mr. Litteral who is the driving force behind the fear of applying for overtime wages, the potential class should be limited to those who regularly interact with him. See Compl., ECF No. 2-1, at ¶¶ 12, 15; Deskins Aff., ECF No. 2-1, at 18-22. Specifically, defendant states that those who regularly interact

with Mr. Litteral likely worked in the administrative offices at the Logan Campus where Mr. Litteral's personal office is also situated. Def.'s Resp., ECF No. 6, at 10-11 (citing Litteral Aff., ECF No. 6-1, at ¶ 4).

Plaintiff only makes one reference to anyone other than Litteral permitting employees to work unpaid overtime hours in her complaint. Specifically, the plaintiff contends that there exists extensive email correspondence, which she hopes to obtain during discovery, between "Litteral/other Southern managers/supervisors and non-exempt employees of Southern demonstrating Southern, Litteral and other supervisors suffering and permitting those non-employees" to work overtime without compensation. Compl., ECF No. 2-1, at ¶ 15.

However, plaintiff later addresses how Mr. Litteral might influence all of defendant's non-exempt employees. In her second affidavit, attached to her reply, plaintiff particularly notes that she has seen Mr. Litteral address college-wide meetings and state that the college would not pay overtime wages unless they were approved before the hours were worked. Deskins Aff., ECF No. 11-1, at ¶ 2. Plaintiff also asserts that she has spoken with a non-exempt employee working at another campus in a department other than administration who does not request overtime wages due to Mr. Litteral's statements. Id. at ¶ 3.

While the plaintiff provides nothing other than a mere allegation that supervisors other than Mr. Litteral encouraged employees to work overtime without applying for overtime wages, she states in her affidavit that Mr. Litteral was in contact with non-exempt employees who worked in places other than the administrative office at the Logan Campus.

However, there is no evidence that plaintiff is similarly situated to employees who did not work full time for the defendant. Plaintiff's affidavits make no mention of part-time employees whose FLSA rights have been violated by defendant.

Accordingly, the court finds that the purported class at this notice stage is best viewed as all of defendant's non-exempt, full-time employees. As already discussed, defendant will have an opportunity to argue that the class, in whole or in part, is not "similarly situated" should it file a decertification motion upon future discovery.

C. Method of Notice

Plaintiff's counsel asks the court to order that defendant provide the names and last known addresses of all potential plaintiffs so that notices of the pending action can

go out to them.  The plaintiff also requests dates of birth and partial social security numbers for any of the potential plaintiffs whose mailed notices are returned by the post office.  Plaintiff's counsel additionally seeks to obtain permission to send a follow-up postcard to class members who have not responded within thirty days.  Finally, plaintiff requests that in addition to the individual mailings, a copy of the notice be posted at all of the defendant's worksites in the same areas in which they post required notices under the Act.

Defendant argues that providing the dates of birth and social security numbers is unnecessary.  The court agrees that plaintiffs should attempt other less invasive means of contact first, before possibly asking the court again for permission to obtain such private information.  See, e.g., Valerio v. RNC Indus., 314 F.R.D. 61, 75 (E.D.N.Y. 2016) ("Courts are reluctant, however, to authorize disclosure of private information, such as dates of birth and social security numbers in the first instance and without a showing that the information is necessary for the plaintiff to notify potential opt-ins of the collective action."); Woods v. Club Cabaret, Inc., 140 F. Supp. 3d 775, 785 (C.D. Ill. 2015) ("Likewise, dates of birth and the last four digits of social security numbers would be of marginal use in locating potential plaintiffs and, whatever that

marginal use might be, it is substantially outweighed by the privacy concerns of potential plaintiffs."); but see Hussein v. Capital Building Servs. Grp., Inc., 152 F. Supp. 3d 1182, 1199-200 (D. Minn. 2015) (finding that the requested contact information, including date of birth and the last four digits of the social security number, "may prove necessary" and ordering its production).

Defendant also opposes sending a follow-up postcard. The court finds, however, that the request to send a follow-up postcard is reasonable if the postcard, like the first notice, is carefully crafted to avoid the appearance that the court endorses the action or encourages participation. See, e.g., Murray v. Silver Dollar Cabaret, Inc., Case No. 5:15-CV-5177, 2017 WL 514323, at *5 (W.D. Ark. Feb. 8, 2017); Woods v. Vector Marketing Corp., No. C-14-0264 EMC, 2015 WL 1198593, at *7 (N.D. Cal. Mar. 16, 2015). Accordingly, the court will review the postcard for the presence and adequacy of such a disclaimer.

Defendant's only objection to the posting of notice at all its worksites is a reiteration of its argument above related to the limiting of the potential class to only certain employees who worked at the Logan Campus. Inasmuch as the court has declined to limit the scope of the class in accordance with

defendant's request, the defendant shall post the notice at all its worksites.

Finally, the court agrees with defendant that before any notice is sent, defendant should be given an opportunity to review it and communicate any concerns it might have. In addition, the court wishes to review and approve the notice.

### III. Conclusion

For the foregoing reasons, the court hereby grants the plaintiff's motion and ORDERS that:

1. The class is conditionally certified as consisting of all non-exempt, full-time employees who have worked for defendant at any time during the three years preceding May 31, 2017;

2. By September 27, 2019, defendant shall provide plaintiff's counsel with the names and last known addresses of all class members;

3. By September 13, 2019, plaintiff shall propose to the defendant and the court a form of the first notice and the follow-up postcard;

4. By September 24, 2019, defendants have an opportunity to object to the form of the notice and the follow-up postcard and negotiate, in good faith, mutually agreeable forms with plaintiff, which forms shall then be submitted for approval to the court by October 4, 2019;

5. After approval of the proposed notice, defendant will promptly post the notice at all its worksites;

6. By October 16, 2019, the parties shall file a Rule 26(f) report by which they wish this matter to proceed; and

7. The scheduling conference in this case is set for October 25, 2019 at 10:00 a.m.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record.

ENTER: August 22, 2019

_____
John T. Copenhaver, Jr.
Senior United States District Judge